**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BILL L. CARSON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 04-7029
(D.C. No. 03-CV-165-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ** , and **BALDOCK** , Circuit Judges, and **BRIMMER** ,** District
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     The Honorable Clarence A. Brimmer, District Judge, United States District
Court for the District of Wyoming, sitting by designation.

Claimant Bill L. Carson appeals from a district court order affirming the Social Security Commissioner's decision denying his application for disability insurance benefits under the Social Security Act. Our jurisdiction arises under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We reverse and remand for further proceedings.

Mr. Carson applied for benefits in June 1999, alleging an inability to work since August 1, 1998, due to severe right shoulder pain, hypertension, and prostatitis. His application was ultimately denied by an administrative law judge (ALJ) and he did not appeal that decision. Instead, he filed a second application for benefits in October 2000, again alleging he had been disabled since August 1, 1998. The agency denied this second application initially and on reconsideration. On April 23, 2002, Mr. Carson received a de novo hearing before another ALJ.

The ALJ concluded, in a decision dated June 25, 2002, that Mr. Carson suffered from severe impairments stemming from "late effects of musculoskeletal injuries with reconstruction of the [right] shoulder, hypertension, and prostatitis." Aplt. App., Vol. II at 22. Nonetheless, the ALJ found that Mr. Carson possessed the residual functional capacity (RFC) to perform a narrow range of light work. Although this RFC precluded Mr. Carson from performing any of his past relevant work, the ALJ found that it did not prevent him from performing other work that is available in the national economy. The ALJ therefore denied Mr. Carson

benefits at step five of the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process).

The Appeals Council denied Mr. Carson's subsequent request for review. Mr. Carson then filed a complaint in federal district court, and the parties consented to having a magistrate judge decide the case. On January 20, 2004, the magistrate judge entered an order affirming the ALJ's decision denying Mr. Carson benefits. This appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Evidence is insubstantial "if it is overwhelmed by other evidence in the record or

-3-

if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

Mr. Carson raises four issues on appeal. He contends the ALJ (1) failed to properly evaluate the opinions of Dr. Malati and Dr. Davis; (2) failed to perform a proper credibility analysis; (3) failed to identify jobs at step five that Mr. Carson actually could perform and that were legally sufficient to satisfy the Commissioner's burden; and (4) reopened Mr. Carson's prior application for disability insurance benefits. We address each issue in turn.

## I. Opinions of Treating and Examining Physicians

Mr. Carson first asserts that the ALJ improperly rejected the opinions of his treating physician, Dr. Malati, and an examining physician, Dr. Davis, without pointing to any contradictory medical evidence in the record. He also asserts that the ALJ improperly rejected his treating physician's opinion without "'providing specific, legitimate reasons' for doing so." Aplt. Opening Br. at 23 (quoting *Doyal*, 331 F.3d at 764).

A treating source opinion is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (outlining framework for ALJ's controlling weight

-4-

determination); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (stating that "an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight") (quotations omitted, alteration in original); *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that treating physician's opinion is generally entitled to greater weight than examining physician's opinion).

Contrary to Mr. Carson's understanding, the ALJ in this case did not *reject* the opinions of Dr. Malati and Dr. Davis. Rather, the ALJ declined to give either doctor's opinion controlling weight. In so doing, the ALJ explained that he did "not give *much weight* to the *limitations* Dr. Malati and Dr. Davis assessed [to be] flowing from" the diagnoses of "reconstruction of the shoulder times two, prostatitis and hypertension" because, after thoroughly reviewing and recounting the record evidence, the ALJ found their opinions to be based on exaggerated symptoms related to them by Mr. Carson. Aplt. App., Vol. II at 29 (emphasis added); *see also id.* at 205-06 (demonstrating Dr. Davis's reliance upon Mr. Carson's views of his ailments). Therefore, the ALJ gave "more weight to the opinion of Dr. Nichols," another examining physician, whose opinion was

-5-

"supported by x-rays, computed tomography (CT), and magnetic resonance imaging (MRI)." *Id*. at 29 [1]

Having meticulously examined the record, and viewing it in its entirety, *Williams*, 844 F.2d at 750, we conclude that the ALJ, in evaluating the opinions of Dr. Malati and Dr. Davis, considered the appropriate factors, gave good reasons for the weight he assigned the physicians' opinions, and adequately explained his reasoning. *See Watkins*, 350 F.3d at 1300-01. We therefore concur with the district court's determination that the ALJ did not commit reversible error in evaluating these doctors' opinions.

## II. Credibility Analysis

Mr. Carson next argues that the ALJ failed to properly evaluate, under 20 C.F.R. § 404.1529(c), Mr. Carson's allegations of totally disabling pain, and failed to discuss all of the pertinent factors. We disagree.

As we have often stated, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs*.,

---

[1]  *See* Aplt. App., Vol. II at 157 (Dr. Nichols's notes regarding x-rays of Mr. Carson's right shoulder, and Dr. Nichols's opinion that "conservative type management" with "a course of physical therapy" would be appropriate); *id.* at 359-60 (doctor notes regarding CT of Mr. Carson's abdomen due to elevated liver enzymes and doctor's "impression" of "small renal cyst, otherwise, negative CT"); *id.* at 331 (letter to Dr. Malati stating that MRI of Mr. Carson's right shoulder, besides showing post-operative change, was "otherwise unremarkable").

898 F.2d 774, 777 (10th Cir. 1990); *see also Casias*, 933 F.2d at 801 ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). We set out the framework for analyzing claims of disabling pain long ago, in *Luna v. Bowen*, 834 F.2d 161, 163-65 (10th Cir. 1987). The ALJ must consider (1) whether the medical evidence establishes a pain producing impairment; (2) if so, whether there is at least a loose nexus between the impairment and the claimant's subjective complaints of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain is disabling. *Id*. Once it is determined that a claimant has an impairment capable of producing pain, the ALJ must then consider his subjective complaints of pain and decide whether they are credible. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ noted the general regulations and law governing assessments of pain and concluded that Mr. Carson established a pain-producing impairment by objective medical evidence. Although not explicit, it appears that the ALJ also found a loose nexus between Mr. Carson's subjective allegations and his impairment.[2] Thus, the ALJ found Mr. Carson at least partially credible. But at the third prong of the analysis, the ALJ did not find Mr. Carson's pain to be

---

[2]    Albeit, at the third prong of the analysis, the ALJ found that the objective medical evidence did not "closely corroborate or correlate with the claimant's subjective complaints." Aplt. App., Vol. II at 28.

totally disabling. Rather, the ALJ found that "the pain experienced by the claimant is limiting but when compared with the total evidence, not severe enough to preclude all types of work." Aplt. App., Vol. II at 27.

In finding Mr. Carson's pain only "limiting," the ALJ properly considered factors pertinent to deciding, at the third prong, whether Mr. Carson's complaints of severe pain were credible: the medication Mr. Carson takes for pain, the alleged effect of Mr. Carson's symptoms on the activities of daily living and basic task performance, and the consistency of his subjective complaints with the objective medical evidence. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) (listing possible factors ALJ may consider at the third prong); *Luna*, 834 F.2d at 165-66 (same). In so doing, the ALJ closely and affirmatively linked his finding that Mr. Carson did not suffer from totally disabling pain to substantial evidence in the record. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

For example, the ALJ highlighted Mr. Carson's testimony that he did not take narcotic pain medication. Aplt. App., Vol. II at 26-27; *see also id.* at 71 ("I try not to take a lot of pain medicine. I take Motrin things like that, after – if I've had problems with my shoulder. It seems to do probably as well as any pain medication."); *Luna*, 834 F.2d at 165 (observing that "one who needs only aspirin surely feels less pain than the one requiring a much stronger drug"). The ALJ

also observed that although Mr. Carson *did not* do dishes, dust, sweep, vacuum, or make his bed, he *did* belong to the Elks Lodge, attend church, and report that he could walk a half-mile a day. These activities, the ALJ found, "are not indicative of his complaints of totally disabling pain." Aplt. App., Vol. II at 28.

Further, the ALJ found that plaintiff's subjective allegations did not closely correlate with the physical findings and supporting clinical data. For instance, Dr. Nichols noted that Mr. Carson had been managed conservatively and should engage in physical therapy, and Dr. Peterson found that Mr. Carson had an "excellent range of motion of his cervical spine," he had "no reflex or motor abnormalities in either upper extremity," and an examination of his right shoulder "revealed no atrophy." *Id.* At the same time, the ALJ found, Mr. Carson's "description of the severity of the pain has been so extreme as to appear implausible." *Id.*

And despite Mr. Carson's assertion, the ALJ did not err by failing to "discuss all of the factors" identified in *Luna*. Aplt. Opening Br. at 30. An ALJ is not required to step through "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," which the ALJ in this case did, "the dictates of *Kepler* are satisfied." *Id.* The ALJ's credibility findings are closely and affirmatively linked to

-9-

substantial evidence. Having examined the record as a whole, we agree with the district court's determination that the ALJ did not err in his credibility analysis.

### III. Step Five of the Sequential Evaluation

After finding that Mr. Carson's RFC precluded him from performing any of his past relevant work, the ALJ moved to step five, where the burden of proof shifted to the Commissioner "to show that the claimant retain[ed] sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). Relying on testimony from a vocational expert (VE), the ALJ found that Mr. Carson could perform the following jobs in the national economy: the unskilled light job of food service worker; the unskilled sedentary job of bench assembly; the unskilled sedentary job of surveillance monitor; and the unskilled sedentary job of information clerk. Mr. Carson contends that none of the jobs relied on by the ALJ satisfies the Commissioner's burden at step five. We agree, and therefore we reverse and remand for further proceedings.

The ALJ found that despite his impairments, Mr. Carson had the RFC to do the following basic work activities:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently;
> stand and/or walk 6 hours out of an 8 hour workday for 30 minutes at
> a time, sit for 6 hours out of an 8 hour workday for one hour at a
> time, occasionally climb, bend, stoop, squat, kneel, crouch and crawl.
> He can occasionally reach with his right upper extremity and would
> be slightly limited in reference to fingering, feeling and gripping. He

should avoid cold temperatures, unprotected heights, fast and dangerous machinery, and rough uneven surfaces. He would also require easy accessibility to rest rooms and low noise.

Aplt. App., Vol. II at 29. Mr. Carson argues that several of the jobs relied on by the ALJ do not fit this RFC. Specifically, he contends that although the VE identified the job of food service worker as one Mr. Carson could perform if he had a less restrictive RFC, the VE testified that if Mr. Carson had the more restrictive RFC actually found by the ALJ, he would not be able to perform this job. Mr. Carson also argues that the bench assembly and information clerk positions, as described in the *Dictionary of Occupational Titles* (DOT),[3] require frequent reaching. Because he is right-handed and the ALJ found he could do only "occasional[] reach[ing] with his right upper extremity," Aplt. App., Vol. II at 29, he contends that he could not perform the bench assembly and information clerk jobs.

In addition, Mr. Carson argues that the job of surveillance monitor does not satisfy the Commissioner's step-five burden because 1) he cannot perform it, 2) it does not exist in significant numbers in the national economy, and (3) it is a sedentary job, and under the medical-vocational guidelines ("grids") he is

---

[3]    U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991).

-11-

presumed disabled if he is limited to unskilled sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14.

In her brief on appeal, the Commissioner concedes that the ALJ erred when he found that Mr. Carson could perform the unskilled light job of food service worker. Aplee. Br. at 17. The Commissioner argues that the ALJ's denial of benefits is nonetheless supportable, because the other jobs the ALJ relied on satisfy the Commissioner's burden. We turn, then, to Mr. Carson's challenges to the remaining jobs.

In her responses to the ALJ's hypothetical questions, the VE identified several categories of jobs Mr. Carson could perform notwithstanding the limitations found by the ALJ. The VE did not, however, specify which jobs listed in the DOT fit the categories she described. Our review shows that the DOT lists five different jobs that are designated "bench assembler." DOT, Vol. II, #706.481-010; *id.* #706.684-022; *id.* #706.684-042; *id.* #727.684-026; *id.* #729.384-026. The DOT describes four of these jobs as light and one as medium; none is described as sedentary. *Id.* #706.684-022 (light); *id.* #706.684-042 (light); *id.* #727.684-026 (light); *id.* #729.384-026 (light); *id.* #706.481-010 (medium).

The *Selected Characteristics of Occupations*, a companion to the DOT, provides that three of the light jobs and the medium job require frequent reaching,

-12-

and the remaining light job requires constant reaching. U.S. Dep't of Labor, Employment & Training Admin., *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* Part A (1993), at 284 (DOT #706.684-022) (frequent); *id.* (DOT #706.684-042) (frequent); *id.* at 189 (DOT #729.384-026) (frequent); *id.* at 188 (DOT #706.481-010) (frequent); *id.* at 189 (DOT #727.684-026) (constant). An activity or condition is considered "constant" when it exists two-thirds or more of the time; it is considered "frequent" when it exists from one-third to two-thirds of the time; and it is considered "occasional" when it exists up to one-third of the time. *Id.*, App. C, at C-3. It appears from the ALJ's decision that he followed these definitions in making his RFC findings. *See* Aplt. App., Vol II at 27 (explaining that "occasional" bending, squatting, kneeling, or crouching meant "up to ⅓ on a given work day").

On its face, the VE's testimony that Mr. Carson could perform bench assembly jobs conflicts with the DOT's descriptions of those jobs. None of the bench assembly jobs described in the DOT is sedentary and all require at least frequent reaching; Mr. Carson, who is right-handed, can reach only occasionally with his right upper extremity.

In *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999), we held that "the ALJ must investigate and elicit a reasonable explanation for any conflict

-13-

between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *See also* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2 (2000). The ALJ here neither acknowledged any conflict between the DOT and the VE's testimony nor elicited an explanation for the conflict. Therefore, as a matter of law, the ALJ was not entitled to rely on the VE's identification of bench assembly jobs to support the Commissioner's burden at step five. [4]

A similar problem exists with the information clerk jobs. The DOT lists five jobs that fall within the category of information clerk. Two of these are light jobs, and three are sedentary. DOT, Vol. I, #237.367-018 (light); *id.* #249.467-010 (light); *id.* #237.267-010 (sedentary); *id.* #237.367-022 (sedentary);

_____

[4] The Commissioner argues that there is no conflict between the DOT and the VE's testimony because the VE reduced the number of available bench assembly jobs by half to accommodate Mr. Carson's limited ability to reach. We are not persuaded. The ALJ asked the VE a hypothetical question involving an individual capable of performing medium, light or sedentary work with a variety of limitations. The VE identified the sedentary job of bench assembly as one such a person could perform. The ALJ then modified this hypothetical question by adding a variety of other limitations, one of which was the limitation to only occasional reaching with the right upper extremity. In response to this new hypothetical question, the VE testified that the number of bench assembly jobs the person could perform would be reduced by half. She did not indicate which of the additional limitations caused this reduction. As Mr. Carson notes, it is just as likely that one of the other additional limitations–such as the need for a sit/stand option–necessitated the reduction. In any event, a mere reduction in the number of available jobs when all of the jobs ostensibly require frequent reaching does not eliminate the apparent conflict with the DOT nor obviate the need for an adequate explanation under *Haddock.*

-14-

*id.* #237.367-046 (sedentary). All but two of the jobs, both sedentary, require frequent reaching. *Compare Selected Characteristics* at 336 (DOT #237.367-046) (frequent reaching), *id.* at 333 (DOT #249.467-010) (same), and *id.* at 336 (DOT #237.367-018) (same), *with id.* at 336 (DOT #237.367-022) (occasional reaching), and *id.* (DOT #237.267-010) (same). Of the two jobs that require only occasional reaching, one has a specific vocational preparation (SVP) level of 4 and the other has an SVP of 5. DOT, #237.367-022 (SVP 4); *id.* #237.267-010 (SVP 5). As Mr. Carson notes, however, the VE testified that all the information clerk jobs she was describing had an SVP level of 2. Aplt. App., Vol. II at 77. So either the VE did not have either of these particular jobs in mind when she testified, or her testimony is again in conflict with the DOT. Without an adequate exploration and explanation of any conflict between the DOT and the VE's testimony, the ALJ was not entitled to rely on the VE's identification of information clerk jobs to support the Commissioner's burden at step five.

We turn, then, to the job of surveillance monitor, the only other job identified by the VE as one that Mr. Carson could perform. The VE described the position as an unskilled sedentary one with an SVP of 2. She testified that there are 700 such jobs in Oklahoma and 57,000 across the nation. Mr. Carson raises several challenges to the ALJ's reliance on this job.

-15-

First, Mr. Carson argues that he cannot perform the job if it requires report writing because, as he testified, he cannot write easily due to the effects of his shoulder impairment on his right hand. The ALJ, however, did not find any limitation on Mr. Carson's ability to write and he did not include any such limitation in the hypothetical questions he posed to the VE. Because there was no conflict between the ALJ's RFC findings and the writing requirements of the job identified by the VE, the ALJ did not err in this respect in relying on the job of surveillance monitor to support the Commissioner's burden.

Next, Mr. Carson contends that there are not a significant number of surveillance monitor jobs in Oklahoma. The Commissioner is entitled to deny benefits to a social security claimant if he finds that the claimant can "engage in . . . substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). For purposes of the statute, "'work which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." *Id.* The VE testified that there are 700 surveillance monitor jobs in Oklahoma that Mr. Carson could perform. In his district court brief, Mr. Carson argued that 700 jobs was not a significant number, but on appeal he concedes that "[i]t is clear that 650 to 900 jobs are . . . considered to be numerous enough to satisfy the requirement that

-16-

jobs be available in 'significant numbers.'" Aplt. Opening Br. at 42 (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)).

Nonetheless, he argues that there are not actually a significant number of surveillance monitor jobs in Oklahoma based on the recent case of *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), in which a VE testified that there were 100 surveillance monitor jobs in Oklahoma that the claimant in that case could perform. Mr. Carson argues that there cannot be 700 surveillance monitor jobs available in Oklahoma at the same time that there are only 100 surveillance monitor jobs available, and he contends that there are not actually a significant number of these jobs available in Oklahoma. He urges us to remand this case for further development of the factors discussed in *Trimiar*, as we did in *Allen*, 357 F.3d at 1144, 1146.

The simple answer to Mr. Carson's argument is that a VE's testimony about how many surveillance monitor jobs are available that some other claimant can perform with that claimant's RFC is not relevant to the question whether the VE in this case identified a significant number of surveillance monitor jobs that Mr. Carson can perform with his RFC. The VE here testified that there are 700 surveillance monitor jobs in Oklahoma that Mr. Carson can perform. Although this number is substantially less than the total number of regional jobs in all four categories originally cited by the ALJ, we could uphold the denial of benefits

based on Mr. Carson's ability to perform this single category of jobs if it were otherwise legally adequate. But Mr. Carson's final challenge to the ALJ's step five findings demonstrates that our reliance on this job would not be legally sound.

At the time he filed for disability benefits, as well as at the time the ALJ issued his decision, Mr. Carson was closely approaching advanced age, he had a twelfth grade education, and he had no transferable skills. The grids provide that such an individual is considered disabled if he can perform only sedentary work. 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.14; *see also id.* § 201.00(g). Although the ALJ found that Mr. Carson could perform a narrow range of light work, the surveillance monitor job that the VE identified is sedentary. Because the grids provide that Mr. Carson is disabled even if he can perform a full range of unskilled sedentary work, he argues that the ALJ's finding that he can perform a particular unskilled sedentary job–surveillance monitor–cannot support a finding that he is not disabled. [5]

Mr. Carson did not raise this argument in the district court. Ordinarily, we will not consider an argument raised for the first time on appeal. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). This rule is not without exceptions,

[5] As Mr. Carson notes, the same is true of all the unskilled sedentary jobs the VE identified; none can support a finding that he is not disabled.

-18-

however, and in unusual circumstances we will exercise our discretion to consider an argument not raised in the district court. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (citing examples of exceptions). The argument Mr. Carson raises is purely a legal one, and its resolution is clear. Moreover, the Commissioner has raised no objection to the claim's being raised for the first time on appeal. Under these circumstances, rather than deem the matter waived, we will consider the legal infirmity of the ALJ's ruling. Because the surveillance monitor job is a sedentary one, we cannot uphold the ALJ's denial of benefits based on Mr. Carson's ability to perform that job.

For all the reasons discussed above, it was not proper for the ALJ to rely on any of the jobs he recited in his decision to support a step-five finding that Mr. Carson was not disabled. We must therefore reverse and remand for further proceedings so that the ALJ can properly determine through additional VE testimony if there are, in fact, any unskilled light jobs in the national economy that Mr. Carson could perform. We note that while this case has been pending in federal court, Mr. Carson has turned fifty-five and is now a person of advanced age. *See* 20 C.F.R. § 404.1563(e). As such, he is now considered disabled under the grids even if he can perform a full range of either unskilled light or sedentary work. *Id.*, Pt. 404, Subpt. P., App. 2, Rule 202.06 (light), Rule 201.06 (sedentary).

## IV. Reopening of Prior Claim

Mr. Carson's final argument on appeal relates to his earlier application for disability benefits filed in June 1999. An ALJ denied that application on June 24, 2000, and Mr. Carson did not appeal that decision. Instead, he filed the current application in October 2000. In his final argument–which does not so much challenge the ALJ's decision as seek a declaration of the legal effect of that decision–Mr. Carson contends that the ALJ effected a *de facto* reopening of his earlier application by considering medical evidence from the prior application period without expressly applying the doctrine of res judicata to the prior application.

The regulations permit the Commissioner to reopen a decision on a previous application for any reason within twelve months of the date of notice of the initial determination and to reopen within four years of the date of notice of the initial determination for good cause. 20 C.F.R. § 404.988(a), (b). When the ALJ reconsiders the merits of an application that was previously denied, "the application is considered reopened as a matter of administrative discretion, and subject to judicial review to the extent it has been reopened." *Robertson v. Sullivan*, 979 F.2d 623, 625 (8th Cir. 1992).

Here, the ALJ asked Mr. Carson's attorney at the beginning of the hearing if there was any reason to reopen the decision on the prior application, and the

-20-

attorney said there was not. The ALJ did not mention the prior application thereafter or suggest in his decision that he was reconsidering that application on the merits. Mr. Carson argues that the ALJ nonetheless effected a *de facto* reopening by considering medical evidence that Mr. Carson presented from the period covered by the prior application. We have previously rejected the argument that "an examination of medical evidence from earlier adjudicated periods somehow reopens [the previously rejected claim]," *Hamlin*, 365 F.3d at 1215 n.8, and we do so again here. *See also Burks-Marshall v. Shalala*, 7 F.3d 1346, 1348 (8th Cir. 1993) (noting that ALJ did not even mention previous application in his decision and holding that "the mere allowance of evidence from the earlier applications, without more, cannot be considered a reopening of the earlier case") (cited with approval in *Hamlin*).

## V. Conclusion

The ALJ erred in relying on any of the four jobs he cited in denying benefits to Mr. Carson at step five. Therefore, we must REVERSE the denial of benefits and REMAND this action to the district court with directions to remand

-21-

it to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge
