F I L E D
United States Court of Appeals
Tenth Circuit

FEB 4 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

—————————

THOMAS JOEL ALLEN,

        Plaintiff - Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant - Appellee.

No. 03-7036

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 01-CV-609-S)

—————————

Submitted on the briefs:

Michael D. Clay, Tulsa, Oklahoma, for Plaintiff-Appellant.

Sheldon J. Sperling, United States Attorney; Cheryl Triplett, Assistant United
States Attorney; Tina M. Waddell, Regional Chief Counsel, Michael
McGaughran, Deputy Regional Chief Counsel, Michelle M. Montemayor,
Assistant Regional Counsel, Social Security Administration, Office of the General
Counsel, Region VI, Dallas, Texas, for Defendant-Appellee.

—————————

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

—————————

**LUCERO** , Circuit Judge.

Plaintiff Thomas Joel Allen appeals from a district court order affirming the denial of his application for disability benefits. The district court (adopting the magistrate judge's findings and recommendations) effectively conceded that the administrative law judge (ALJ) erred in his analysis, but upheld the denial of benefits nonetheless by relying upon certain analytical revisions offered on judicial review. Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process. Because the ALJ's decision cannot stand on its own erroneous rationale, we reverse and remand the case for further proceedings before the agency. [1]

Upon receiving an application for disability benefits, an ALJ is required to assess whether or not the claimant is disabled in a five-step, sequential analysis. This analysis evaluates whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant has a medically severe impairment or impairments, (3) the impairment is equivalent to one of the impairments listed in

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

the appendix of the relevant disability regulation, [2] (4) the impairment prevents the claimant from performing his or her past work, and (5) the claimant possesses a residual functional capability (RFC) to perform other work in the national economy, considering his or her age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4) (2003); see also, Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Williams v. Bowen, 844 F.2d 748, 750-52 (10 th Cir. 1988).

In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." See 20 C.F.R. § 404.1567; id. pt. 404, subpt. P, app. 2; Trimiar, 966 F.2d at 1332. Five degrees of residual functional capacity are outlined in the grids by general exertional level – sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n.22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c). If the ALJ finds that a claimant's exertional

---

[2] The appendix lists impairments by body system (i.e., musculoskeletal, cardiovascular, digestive, neurological, etc.). 20 C.F.R. pt. 404, subpt. P, app. 1. If a claimant has a listed impairment that lasts the duration required in the appendix, the claimant is found disabled, without regard to his or her age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(iii) and (5)(d).

capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. Haddock v. Apfel, 196 F.3d 1084, 1088 (10 th Cir. 1999).

Based on medical records indicating a history of chronic back problems, the ALJ determined that Allen's severe spinal impairment precluded his return to past relevant work. Finding that his impairment did not foreclose all significant opportunities for gainful employment, however, the ALJ denied disability benefits at step five of the controlling analytical sequence, erroneously concluding that Allen was not disabled because he retained the capacity to perform light work. The difficulty with the ALJ's decision stems from his failure to link his findings regarding Allen's RFC to his conclusion regarding Allen's vocational opportunities, resulting in a flawed assessment of Allen's disability status.

While the ALJ found Allen capable of light work, this finding was qualified by many additional physical restrictions including: limits on climbing stairs, ramps, ladders, scaffolds or ropes; on bending, stooping, crawling or crouching; on operating controls either overhead or with foot pedals; and on working in unprotected heights or near dangerous moving machinery. Further qualifying Allen's RFC with significant nonexertional restrictions, the ALJ included limits on more than simple or moderately detailed work instructions; on more than superficial interaction with co-workers and supervisors; and on more than

occasional interaction, in person or by phone, with the public. After acknowledging that this restrictive RFC precluded Allen's return to his past work, the ALJ's decision splintered into two distinct rationales–one relying upon an erroneous application of the Medical-Vocational Guidelines and the other relying upon a flawed specification of jobs available–both of which are plainly at odds with the RFC findings.

During Allen's disability hearing, the ALJ questioned a vocational expert (VE) fairly extensively regarding other jobs Allen could perform, yet his findings do not comport with these inquiries. Specifically, the ALJ asked the VE to list jobs that a hypothetical individual with Allen's RFC could perform. In response, the VE suggested surveillance systems monitor. Then the ALJ proposed another hypothetical matching Allen's RFC, but without the public contact restrictions. To this latter question, the VE replied by listing jobs such as toll booth operator and self-service cafeteria worker.

"[B]ased upon the claimant's age, education, work experience, and the RFC described . . . ," the ALJ found that "the 'Medical-Vocational Guidelines' (commonly know as the 'Grids') . . .would apply and direct a conclusion that the claimant is 'not disabled.'" Aplt. App., Vol. II at 22-23. To reach this conclusion, the ALJ ignored the many additional physical and mental restrictions that <u>he</u> <u>found</u> qualified Allen's RFC and simply applied the grids for light

work–contrary to the pertinent regulations and a large body of circuit precedent precluding use of the grids unless the claimant's RFC precisely matches the RFC specified for the grid relied upon. See 20 C.F.R. §§ 404.1569, 404.1569a; id. pt. 404, subpt. P, app. 2, § 200.00(e); Haddock, 196 F.3d at 1088 ("When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids."); Channel v. Heckler, 747 F.2d 577, 581-82 (10 th Cir. 1984) (citing case law recognizing that an ALJ's conclusive reliance on grids is erroneous when the ALJ fails to make findings regarding non-exertional impairments). This error is so plain that the grid rationale set out in the ALJ's dispositional findings is not even a subject of discussion in the Appellee's briefs.

The district court defended the ALJ's decision as a determination based not on the grids but on the VE's identification of specific jobs in response to the ALJ's inquiries incorporating Allen's RFC and associated limitations. This facially more creditable rationale for the decision is based on statements made in the body of the ALJ's decision, yet this rationale was not carried forward into the final dispositional section. In any event, this reconstructed version of the ALJ's decision ultimately founders on the same RFC complications that undercut the grid rationale. The ALJ recited that the VE had "identified jobs in significant

-6-

numbers . . . within the limits set by [Allen's] RFC," and then named "surveillance monitor," "toll booth operator," and "self-service (cafeteria) cashier." Aplt. App., Vol. II at 21. Again, the problem is that the VE had specifically omitted the latter two obviously public occupations when the ALJ limited his query to Allen's precise RFC, which included limitations on public interaction. See id. at 19-20, 379-80.

Painted into a corner by these undeniable errors in the ALJ's decision, the Appellee makes the only argument left: that the denial of benefits is supportable on the basis that the remaining (one hundred statewide) surveillance-monitor jobs identified by the VE constitute "work which exists in significant numbers" under 42 U.S.C. § 423(d)(2)(A). See Trimiar, 966 F.2d at 1330. Attempting to bolster this position, the Appellee cites a few cases in which courts affirmed an ALJ's judgment that a small number of statewide jobs satisfied the "significant numbers" condition set out in the statute. None of these cases involved a number as low as one hundred. Overriding the bare numbers is the procedural fact that these cases involved court review of a finding of numerical significance made by the ALJ; they were not deciding in the first instance that a particular number was significant under the circumstances. This court has made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized

evaluation, and, most importantly, that the evaluation "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." Trimiar, 966 F.2d at 1330 (quotation omitted). Such a determination is precisely what is presently lacking.

Because the ALJ erroneously relied upon 800 publicly interactive jobs, despite the direct conflict with his RFC findings, he never had occasion to decide if the one hundred surveillance jobs alone constituted a significant number under the statute. Thus, he did not give explicit consideration to the factors this court has recognized should guide the ALJ's commonsense judgment, such as "the level of [Allen's] disability; the reliability of the [VE's] testimony; the distance [Allen] is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." Trimiar, 966 F.2d at 1330 (quotation omitted). Faced with this problem, the Appellee punts, saying that "[e]ven without these two [public] jobs, the ALJ found that Claimant was not disabled because a significant number of jobs existed." Aplee. Br. at 8. To the extent the Appellee is asserting that the ALJ alternatively found the one hundred surveillance jobs alone sufficient to satisfy the numerical-significance requirement, the statement is wrong; to the extent the Appellee is not making that assertion, the statement is meaningless.

We should emphasize that _Trimiar_'s insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to "review the ALJ's decision for substantial evidence" and, accordingly, "we are not in a position to draw factual conclusions on behalf of the ALJ." _Drapeau v. Massanari_, 255 F.3d 1211, 1214 (10th Cir. 2001) (quotation omitted). Unless we could hold _as a matter of law_ –and thus not fact, which is beyond our purview–that one hundred is so large a number as to conclusively establish the requisite numerical significance, _Drapeau_ precludes affirmance here just as _Trimiar_ does.

This brings us to the Appellee's final line of defense–the principle of harmless error. We have generally recognized the applicability of this principle in the administrative review setting. _See_ _St. Anthony Hosp. v. United States Dep't of Health & Human Servs._, 309 F.3d 680, 691 (10th Cir. 2002) (following _All Indian Pueblo Council v. United States_, 975 F.2d 1437, 1443 (10th Cir. 1992)). Further, we have specifically applied it in social security disability cases, though not always by name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting. For example, this court has held that certain technical errors were "minor enough not to undermine confidence in the determination of

-9-

th[e] case," Gay v. Sullivan, 986 F.2d 1336, 1341 n.3 (10 th Cir. 1993); Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10 th Cir. 1990), and that an "ALJ's conduct, although improper, d[id] not require reversal" because the procedural impropriety involved had not "altered the evidence before the ALJ," Glass v. Shalala, 43 F.3d 1392, 1396-97 (10 th Cir. 1994). For present purposes, one significant thing this heterogeneous group of cases has in common is that in none of them did this court hold an ALJ's failure to make a dispositive finding of fact harmless on the basis that the missing fact was clearly established in the record, which is the only possible basis for invoking the principle in this case.

Two considerations counsel a cautious, if not skeptical, reception to this idea. First, if too liberally embraced, it could obscure the important institutional boundary preserved by Drapeau's admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in SEC v. Chenery Corp., 318 U.S. 80 (1943) and its progeny.

With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not

properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. Such an approach might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater. In Trimiar, we explicitly addressed an ALJ's finding of numerical significance with respect to an occupation reflecting 650-900 statewide jobs, indicating that such a number was small enough to put the issue in a gray area requiring the ALJ to address it and us to review what he or she decided. See Trimiar, 966 F.2d at 1330. As the number in this case is even lower, excusing the ALJ's failure to assess it in connection with the Trimiar factors would be an improper exercise in judicial factfinding rather than a proper application of harmless-error principles.

In sum, the ALJ's decision contains two critical errors: use of the grids contrary to RFC findings, and specification of available jobs contrary to VE testimony based on the same RFC findings. Any attempt to save the decision, by finding that the one job Allen concededly can do constitutes significant work, usurps the ALJ's primary responsibility to determine that question in light of the various case-specific considerations outlined in Trimiar.

The judgment of the district court is REVERSED and the cause is REMANDED with instructions to remand, in turn, to the Commissioner for further proceedings consistent with this opinion.