**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHARLOTTE L. DYE,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

        Defendant-Appellee.

No. 05-5182
(D.C. No. 04-CV-538-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

        Charlotte L. Dye appeals from an order of the district court affirming the

Commissioner's decision denying her application for disability insurance benefits.

Ms. Dye filed for these benefits on September 29, 1998, alleging January 17,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

1997, as her onset date of disability. The agency denied her application initially and on reconsideration. Ms. Dye received a de novo hearing before an administrative law judge (ALJ) and the ALJ issued an unfavorable decision. The district court reversed and remanded.

On remand, Ms. Dye had another hearing before the ALJ. The ALJ determined that Ms. Dye could perform light exertional work. The ALJ therefore denied Ms. Dye's application for benefits concluding that she was not disabled at step four of the analysis because she could perform her past relevant work as a sales clerk. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process for evaluating claims for disability benefits).

On appeal, Ms. Dye contends that the ALJ failed to perform a proper evaluation at step three of the sequential process and failed to properly evaluate the opinion of her treating physician. We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). We reverse and remand for further proceedings.

The Step Three Determination

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary

acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). The ALJ's step three finding should discuss the evidence and explain why the ALJ found that the claimant was not disabled at that step. *Id.* "[A]n ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10 (citation omitted). Here, the ALJ made the following step three findings:

> As variously described within the medical evidence, the claimant's asthma, chronic obstructive pulmonary disease, heart impairment, and hand impairment are 'severe' by Social Security definition. However, her impairments, either singularly or in combination, do not meet or equal the severity of any impairment listed in Appendix 1 to Subpart P, Regulations No. 4. The claimant's impairments were considered under Sections 3.02 and 3.03, respectively, of the impairment listings. Pulmonary test results show that the claimant's level of function does not meet the requirements of either Section 3.02 or 3.03. (Exhibit 3F, page 8). While the claimant's test results did fall within the parameters of the impairment listings during one trial, the balance of the evidence otherwise indicates that she was capable of demonstrating sufficient pulmonary capacity. As set out in the preamble for impairments of the respiratory system under Section 3.00E., the best of three results are used for purposes of determining listing level severity. As the claimant was able to achieve a reading $FEV^1$ of 1.42 and a FVC 1.57, the requirements for a person of her height ($FEV^1$ of 1.25 or FVC of 1.45) are not met. Under Section 1.02B, the claimant remained able to effectively use her upper extremities for gross and fine manipulation, so the requirements of this provision are not established. Although the claimant[] has a noted heart impairment, the requirements for disability under Sections 4.01 through 4.12 are not met. Disability, therefore, cannot be established under 20 C.F.R. § 404.1520(d).

Admin. R. at 212-13.

Ms. Dye does not challenge the ALJ's step three findings related to her hand impairment or her pulmonary disease. She argues, however, that the ALJ's consideration of whether she met any of the cardiac listings is too conclusory and is therefore beyond meaningful judicial review. *See Clifton*, 79 F.3d at 1009-10. We agree. The ALJ's discussion of Ms. Dye's pulmonary condition, which addresses the relevant evidence and explains why he is rejecting one set of test results that did fall within the parameters of the impairment listings, reflects an appropriate step three evaluation. In contrast, the ALJ's consideration of Ms. Dye's cardiac impairment is limited to a one sentence conclusion without any discussion of the medical evidence: "Although the claimant[] has a noted heart impairment, the requirements for disability under Sections 4.02 through 4.12 are not met." Admin. R. at 213. This conclusory statement is similar to the "bare conclusion" that this court found problematic in *Clifton*, which simply stated that claimant's impairments did not meet or equal any listed impairments. *See Clifton*, 79 F.3d at 1009. Thus, the ALJ here, like the ALJ in *Clifton*, erred in failing to "discuss the evidence and explain why he found that [claimant] was not disabled at step three." *Id.*

In *Clifton*, we remanded to the ALJ to address this error, but the Commissioner argues here that we do not need to remand because we can apply

the harmless error analysis that we used in *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). We disagree. In *Fischer-Ross*, this court explained that a *Clifton* error would not require a remand as long as "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review," *id.* at 734, and "no reasonable factfinder could conclude otherwise," *id.* at 735. In *Fischer-Ross*, the claimant claimed disability based on carpal tunnel syndrome, lumbar spondylosis, and allergic rhinitis. We explained how the ALJ's findings in other parts of the decision supported a determination that claimant was not disabled at step three. With respect to claimant's lumbar spondylosis, for example, we noted that the listing for spinal disorders would require a limited range of motion, the need for postural changes more than once every two hours, or the inability to ambulate effectively. *See id.* Because the ALJ found that claimant retained "the primary postural capacities, i.e., sitting, standing, walking, for sedentary, light, and even medium work, as well as the ability to lift at the light RFC level and to stoop, crawl, crouch and kneel occasionally" these findings "conclusively negate[d] the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Id.* at 735.

Here, Ms. Dye is arguing that she meets Listing § 4.04, which requires:

> *Ischemic heart disease*, with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment . . . . With one of the following:
> A. Sign-or symptom-limited exercise test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:
> . . .
> 4. Failure to increase systolic pressure by 10 mmHg, or decrease in systolic pressure below usual clinical resting level . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 4.04. As the district court acknowledged, the record establishes that Ms. Dye completed an exercise test at 4.6 METs, and her systolic pressure did not increase by 10mmHg. Aplt. App. at 21; Admin. R. at 93-94. Ms. Dye therefore argues that the results of her exercise test demonstrate that she fulfills the criteria to meet or equal Listing § 4.04. Because the ALJ did not discuss this highly probative evidence, in order to establish harmless error, there must be other objective findings in the ALJ's sequential step analysis that either negate the validity of the exercise test, or that affirmatively establish that Ms. Dye does not meet the other requirements for the listing. There are no such findings.

During the ALJ's credibility discussion, he notes that Ms. Dye voluntarily discontinued the exercise test after one minute and fourteen seconds due to shortness of breath, although "she subsequently reported activities of daily living that reflect a significantly greater capacity to exert herself." Admin. R. at 214. He then went on to list such activities as bicycle riding and swimming. First, this

finding is not supported by the record. The record reflects that although Ms. Dye stated that she used to swim, she explained that she no longer swims because of her condition, *see id.* at 76, and that she only rides her bike for "[a]bout fifteen yards," *id.* at 182. Second, these are not the type of objective findings based on medical evidence in the record that could offer a legitimate rebuttal to the results of Ms. Dye's exercise test. Finally, the ALJ did not make any findings that there were any problems with the testing methodology or that the results of the exercise test were faulty.

With regard to the rest of the criteria for Listing § 4.04, there is sufficient evidence in the record to create a question as to whether Ms. Dye met the other requirements for the listing and there are no findings by the ALJ, like those in *Fischer-Ross*, that conclusively negate the possibility that Ms. Dye can meet the other listing requirements. Those requirements are: 1) Ischemic heart disease; 2) with chest discomfort associated with myocardial ischemia; 3) while on a regimen of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 4.04. The ALJ found that Ms. Dye has "been medically evaluated for heart problems. She complained of chest discomfort. She was determined to have angina. She [was] intermittently examined for complaints of chest pain." Admin. R. at 211 (citations omitted). Ms. Dye's diagnosis of angina pectoris, *see id.* at 118, is discomfort of myocardial ischemic origin, as required by the

listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00E3.  The record also reflects that Ms. Dye was prescribed Nitrostat to be taken for chest pain.  *See id.* at 122.  With regard to the requirement for ischemic heart disease, after Ms. Dye's exercise test, the doctor performing the test advised Ms. Dye to have a dobutamine stress echocardiogram because "this could very well be coronary artery disease" and "she may have a myocardial infarction."  *Id.* at 93.  Coronary heart disease is ischemic heart disease.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00E3.  Ms. Dye refused to have the echocardiogram because she could not afford it; as a result, there is no evidence in the record that provides a definitive diagnosis on this issue.  There are, however, no findings by the ALJ that affirmatively establish that Ms. Dye cannot meet the requirements for Listing § 4.04.  The ALJ's RFC findings are unhelpful because they deal with Ms. Dye's functional limitations, which are not directly related to the requirements for Listing § 4.04.

We cannot attempt to supply a missing finding for the ALJ on legal or evidentiary matters that he did not consider because "it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  Because we cannot "confidently say that no reasonable administrative factfinder, following the

correct analysis, could have resolved the factual matter in any other way," *id.*, we conclude that the ALJ committed reversible error.

<u>The Treating Physician's Opinion</u>

We must still address Ms. Dye's remaining allegation that the ALJ erred in the consideration of her treating physician's opinion because it is a separate and distinct assertion of legal error that could affect the disposition of this case on remand. Ms. Dye asserts that the ALJ did not properly evaluate the opinion of her treating physician in accordance with this court's decision in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003).

In deciding the weight to give the opinion of a treating physician, the ALJ must first decide whether the opinion qualifies for "controlling weight," which requires an initial determination of whether the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (quotation omitted). If the opinion does not meet this standard then the inquiry stops there. If it does, then the ALJ must determine whether the opinion is consistent with other substantial evidence in the record. *Id.* If the ALJ finds that the opinion is lacking in either respect, it is not entitled to controlling weight. *Id.* Even if the opinion is not entitled to controlling weight, it should be evaluated considering the factors set forth in 20 C.F.R. § 404.1527(d) to determine how

much weight it should be given. *Id.* If the ALJ decides to reject the opinion, he must give specific, legitimate reasons for doing so. *Id.* at 1301.

Ms. Dye's physician, Dr. William Fesler, offered the following opinion: "[Patient] has chronic disability [with] severe lung disease [and] chronic pain [with] sitting or standing[;] also has inability to see well enough to use a computer[.] [Patient] is on multiple meds [and] disability is considered permanent." Admin. R. at 139.

In discussing Dr. Fesler's opinion, the ALJ correctly explained that "opinions regarding the ultimate issue of disability are reserved to the Commissioner by regulation. 20 C.F.R. § 404.1527(e). Consequently, Dr. Fesler's broad conclusion that the claimant is disabled cannot be given controlling weight." Admin. R. at 213. A treating physician's opinion on the ultimate issue of disability "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5. The opinion, however, "must not be disregarded." *Id.*

The ALJ then went on to consider each of the conclusions in Dr. Fesler's opinion and gave specific, legitimate reasons for rejecting those conclusions. With respect to Dr. Fesler's statement that Ms. Dye has "severe lung disease," the ALJ explained that "[t]he severity of [Ms. Dye's] lung impairment is established through pulmonary testing." Admin. R. at 213. The pulmonary testing

established that her condition was not sufficiently severe to meet any of the listings. *Id.* at 212-13. Likewise, the ALJ explained that Dr. Fesler's statement that Ms. Dye could not see well enough to use a computer was contradicted by the medical evidence, which demonstrated that Ms. Dye's vision was 20/20 bilaterally when corrected. *Id.* at 211, 213. Finally, the ALJ noted that Dr. Fesler's remarks concerning Ms. Dye's subjective complaints of chronic pain with sitting or standing is a matter for Ms. Dye's credibility. The ALJ concluded by explaining "[a]lthough Dr. Fesler's conclusions have been considered, they are not very persuasive in establishing an appropriate residual functional capacity for the claimant prior to the date last insured." *Id.* at 213. The ALJ's decision provides legally sufficient and factually supported reasons for rejecting Dr. Fesler's opinion.

Although we conclude that the ALJ did not err in the evaluation of the treating physician's opinion, this case "must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three," with respect to Ms. Dye's heart impairment. *Clifton*, 79 F.3d at 1010. Without expressing any opinion on the matter, the ALJ may need to recontact Ms. Dye's treating physicians or order a consultative examination or other testing to adequately develop the record regarding Ms. Dye's heart impairment. *See* 20 C.F.R. § 404.1512(e) and (f). Accordingly, we REVERSE the judgment of the

district court and REMAND the action to the district court with directions to remand to the Commissioner for further proceedings consistent with this decision.

Entered for the Court


Bobby R. Baldock
Circuit Judge