**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS J. RICHARDSON,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant-Appellee.

No. 11-4096
(D.C. No. 2:09-CV-00851-BCW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

Thomas J. Richardson appeals from a district court order affirming the

Commissioner's denial of his application under 42 U.S.C. § 402(d)(1) for

Childhood Disability Benefits. Exercising jurisdiction under 28 U.S.C. § 1291

and 42 U.S.C. § 405(g), we reverse and remand for further consideration by the

administrative law judge, consistent with this order and judgment.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

On November 22, 2006 ("application date"), Mr. Richardson filed two applications for Social Security benefits: one for Childhood Disability Benefits as a Disabled Adult Child under 42 U.S.C. § 402(d)(1) ("DAC claim"), and one for Supplemental Security Income benefits under 42 U.S.C. § 1382 ("SSI claim"). Under the Social Security Act, the child of an individual who is entitled to old-age or disability insurance benefits may qualify for Childhood Disability Benefits. *See* 42 U.S.C. § 402(d)(1). More specifically, and as relevant in this case, an unmarried person over the age of eighteen is entitled to Childhood Disability Benefits if he (1) files an application; (2) is the child of an insured person; (3) is dependent upon the insured person; and (4) was disabled before his twenty-second birthday. *See id.*; *see also* 20 C.F.R. § 404.350(a).

Mr. Richardson was thirty-three years old on his application date. He filed his DAC claim as a dependent of his father, claiming that he was disabled before the age of twenty-two. Mr. Richardson was born in 1973, and therefore he turned twenty-two at some point in 1995.[1]

After he filed his applications, Mr. Richardson was examined by Dr. Carlisle, a consulting psychologist. Dr. Carlisle diagnosed him with Asperger's Disorder. The doctor ultimately opined that "[o]verall, it's my

---

[1] Wherever Mr. Richardson's exact date of birth appeared in the record, it was redacted.

impression that the claimant has a fairly severe disability and I doubt if he is going to be able to obtain and hold down a job." Aplt. App., Vol. I at 173.

Both of Mr. Richardson's applications were initially denied. He requested a hearing and appeared and testified before an administrative law judge ("ALJ"). The ALJ followed the five-step sequential-evaluation process for determining whether Mr. Richardson is disabled and, as to his DAC claim, whether he was disabled prior to his twenty-second birthday. *See generally Williams v. Bowen*, 844 F.3d 748, 750-52 (10th Cir. 1988) (describing five-step sequential-evaluation process). The ALJ found that, as of his application date, Mr. Richardson has had the following severe impairments: developmental delays, Autism, and Asperger's Syndrome. The ALJ concluded at step three that he became disabled on his application date because the severity of his impairments met the requirements of § 12.10 of the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.10. The ALJ therefore granted his SSI claim. In concluding that Mr. Richardson was disabled as of his application date, the ALJ indicated that he agreed with Dr. Carlisle's findings.

The ALJ denied Mr. Richardson's DAC claim, stating there was no evidence he was under a disability beginning before his twenty-second birthday. The ALJ found that, before his application date,[2] Mr. Richardson had a

---

[2] Having found that Mr. Richardson became disabled on his application date,

continue...

developmental delay that qualified as a severe impairment, but this impairment did not prevent him from performing unskilled work. The ALJ concluded that Mr. Richardson's residual functional capacity ("RFC") prior to his application date allowed him to perform a full range of work at all exertional levels, but limited to simple, repetitive tasks. Finally, using the Medical-Vocational Guidelines ("the Grids") as a framework, the ALJ determined that Mr. Richardson's non-exertional limitations had little or no effect on the occupational base of unskilled work at all exertional levels. Therefore, the ALJ concluded at step five that Mr. Richardson was not disabled prior to his application date, making him ineligible for Childhood Disability Benefits as a Disabled Adult Child.

After the Appeals Council denied review, Mr. Richardson filed an action in district court seeking reversal of the Commissioner's decision denying his DAC claim. The district court affirmed the Commissioner's decision, and Mr. Richardson filed a timely appeal.

**II.**

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the

---

[2]...continue
the ALJ's subsequent findings addressed the entire period before that date, rather than solely the period before he turned twenty-two.

correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Mr. Richardson raises the following claims of error regarding the ALJ's determination that he was not disabled prior to his application date: (1) the ALJ failed to consider and discuss significantly probative evidence in the record; (2) the ALJ's RFC determination is not supported by substantial evidence; (3) the ALJ should have consulted a medical advisor to determine Mr. Richardson's disability-onset date; and (4) the ALJ erred in conclusively applying the Grids to find him not disabled before his application date. We reverse and remand to allow the ALJ to explain the weight he gave to a state-agency medical consultant's opinion regarding Mr. Richardson's mental RFC before he attained age twenty-two.

## A.

The ALJ found that "there is inconclusive evidence to support a determination of disability back to 1995 – when the claimant attained age 22." *Id.* Mr. Richardson argues that, in reaching this finding, the ALJ failed to consider and discuss significantly probative evidence relevant to that time period, as required by *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In *Clifton* we stated that

> [t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence

-5-

> he chooses not to rely upon, as well as significantly probative
> evidence he rejects.

*Id.* at 1009-10 (citation omitted). Mr. Richardson maintains it was error for the ALJ to fail to discuss the mental RFC opinion prepared by Dr. Hedges, a state-agency medical consultant, as well as a statement from his special education teacher.

**1.**

Dr. Hedges prepared both a Psychiatric Review Technique ("PRT") form and a Mental Residual Functional Capacity ("MRFC") form. Both of these forms explicitly covered a time period beginning in 1995 and extending through the date that the assessments were completed in March 2007.[3] In the PRT form, Dr. Hedges opined that Mr. Richardson has the medically determinable impairment of Asperger's syndrome, concluding further that he has moderate restrictions or difficulties in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. In the MRFC form, Dr. Hedges included fourteen more specific moderate limitations in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Hedges did not indicate, with respect to

---

[3]    The time period listed on the MRFC form begins in January 1995, but the exact date during that month was redacted. The month and day in 1995 were similarly redacted on the PRT form. But the parties do not dispute that Dr. Hedges' forms purported to provide an assessment of Mr. Richardson's condition prior to his twenty-second birthday.

any of these categories, that Mr. Richardson's limitations were not ratable based on the available evidence. The doctor ultimately concluded, regarding Mr. Richardson's RFC, that "[a]lthough there is a relative paucity of information about this claimant[], the available findings suggest that he is mentally capable of simple, low-stress repetitive work." Aplt. App., Vol. I at 194.

The Commissioner initially asserts that the ALJ's RFC findings were largely consistent with, although marginally more restrictive than, Dr. Hedges' RFC findings. The Commissioner then proceeds to argue that it was reasonable for the ALJ not to adopt Dr. Hedges' opinion wholesale because it was based on a medical exam more than a decade after Mr. Richardson turned twenty-two. The Commissioner maintains further that Dr. Hedges' inclusion of a low-stress work limitation in Mr. Richardson's RFC was insufficiently supported by the record. The Commissioner concludes: "Although the ALJ found the opinion to be partially corroborated by other evidence, it was reasonable for him not to adopt the uncorroborated portions." Aplee. Br. at 21.

The problem is that the ALJ made no such findings. The ALJ briefly discussed Dr. Hedges' PRT form, noting the doctor's acknowledgment that Mr. Richardson has an autistic and/or other developmental-delay disorders, and reviewing the moderate limitations the doctor noted in that form. But the ALJ did not mention Dr. Hedges' RFC opinion or his additional, low-stress-work limitation, much less evaluate whether it was supported by the record.

-7-

Mr. Richardson maintains that the Commissioner is engaging in post hoc reasoning, and we agree. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (rejecting government's post hoc attempt to support ALJ's RFC findings with reasoning ALJ did not articulate). We remanded in *Haga* "because the ALJ failed to explain why he rejected some of [a doctor's] restrictions while seemingly adopting others." *Id.* at 1207. Here the ALJ never stated that he rejected Dr. Hedges' opinion regarding Mr. Richardson's condition and limitations prior to his twenty-second birthday. Indeed, it is not clear whether the ALJ accepted some, but not all, of Dr. Hedges' limitations, or entirely failed to consider the doctor's RFC opinion with respect to that time period. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id.* at 1207-08.

**2.**

The Commissioner argues that a remand is not necessary because any error resulting from the ALJ's failure to include a limitation to low-stress work in Mr. Richardson's RFC was harmless. The Commissioner maintains that, even with that additional restriction, Mr. Richardson would not have met the standards for disability. In support of this contention, the Commissioner points to a Disability Determination and Transmittal form finding Mr. Richardson not disabled before age twenty-two, which listed Dr. Hedges as the physician or medical specialist. *See* Aplt. App., Vol. I at 44. The Commissioner contends this

-8-

document shows that Dr. Hedges, working with a disability examiner, determined that even with a limitation to low-stress work there would have been jobs available that Mr. Richardson could perform.[4]

We are not persuaded. The Commissioner bears the burden at step five of the sequential-evaluation process to establish that "the claimant has the [RFC] to perform other work in the national economy in view of his age, education, and work experience." *Williams*, 844 F.2d at 751 (quotation omitted). While there is no dispute that Mr. Richardson has no exertional limitations, the ALJ made no finding whether a non-exertional limitation to low-stress work, in addition to the limitations to simple and repetitive work, would "significantly limit his ability to perform the full range of work in a particular RFC category on a sustained basis." *Id.* at 752 (quotation omitted). "[W]e are not in a position to draw factual conclusions on behalf of the ALJ." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quotation omitted). Nor is there evidence in the record conclusively establishing the existence of jobs in the national economy that Mr. Richardson could perform despite an additional limitation to low-stress work, such that "we could confidently say that no reasonable administrative fact finder,

---

[4]    The Commissioner fails to note that the disability examiner's contemporary assessment of the jobs available to Mr. Richardson was based inexplicably only on a restriction against working at heights. *See* Aplt. App., Vol. I at 46.

following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

We therefore remand to allow the ALJ to perform a proper evaluation of Dr. Hedges' RFC opinion. *See Haga*, 482 F.3d at 1208; *see also* 20 C.F.R. § 404.1527(f)(2)(i) & (ii) (stating ALJ must consider findings and other opinions of state-agency psychologists as opinion evidence and, where no treating source opinion is given controlling weight, must explain the weight given such opinion). Mr. Richardson argues that the ALJ should have discussed not only Dr. Hedges' opinion that he was limited to low-stress work, but also the fourteen more specific moderate restrictions the doctor listed in the MRFC form. The Commissioner responds that all of the moderate restrictions detailed in that form were encompassed in Dr. Hedges' ultimate RFC opinion limiting Mr. Richardson to simple, low-stress, repetitive work. Mr. Richardson disagrees, citing as an example the moderate limitation related to social functioning. In light of our remand, the ALJ should determine in the first instance the significance of Dr. Hedges' fourteen moderate limitations vis-à-vis his conclusion that Mr. Richardson could perform simple, low-stress, repetitive work.

**3.**

Mr. Richardson argues that the ALJ was also required to discuss a statement submitted by his special-education teacher, Roberta Suttlemyre. She stated generally that Mr. Richardson "has been challenged from birth by several

learning problems, both educational and social." Aplt. App., Vol. I at 155. She said that, while she "struggled to help [him] with every aspect of his schoolwork during his junior high and high school years," she did not succeed in getting him to function at a fifth-grade level. *Id.* She noted his difficulties in concentrating and retaining information. *Id.* Ms. Suttlemyre also indicated that she had observed Mr. Richardson both in school and at church, and she opined that his ability to interact with others was very limited, and he was only comfortable with his own family. She felt that, if Mr. Richardson were a student today, current evaluation procedures would assess him as having a mild autistic/Asperger's type syndrome. She stated that he is at least "mildly retarded" with "a severe lack of social skills." *Id.*

Mr. Richardson points out that evidence from a teacher may be used to show the severity of a claimant's impairments and how they effect his ability to function. *See* 20 C.F.R. § 404.1513(d)(2); *see also* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (stating information from non-medical sources, such as teachers, "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"). Therefore, Mr. Richardson argues that Ms. Suttlemyre's statement is significantly probative evidence of the effects of his impairment on his ability to function, in light of Dr. Hedges' opinion stating that he had the medically determinable impairment of Asperger's syndrome prior to his twenty-second birthday.

The Commissioner responds that an ALJ is not required to discuss every aspect of the evidence, and the ALJ's discussion of the evidence in this case, following his statement that he had carefully considered the entire record, was legally sufficient. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (noting general practice of taking "lower tribunal at its word when it declares that it has considered a matter"). The Commissioner argues further that the ALJ was clearly aware of Ms. Suttlemyre's statement, noting that he acknowledged receiving it on the record during a hearing. *See* Aplt. App., Vol. I at 41. Finally, the Commissioner contends that the teacher's statement was cumulative of the other school-related evidence in the record, which showed only that Mr. Richardson had some learning difficulties in school, not that he had an impairment that made him unable to engage in substantial gainful activity.

We agree with the Commissioner that it is clear from the record that the ALJ was aware of Ms. Suttlemyre's statement. *See Clifton*, 79 F.3d at 1009 (stating record must demonstrate ALJ considered all evidence). This case is also distinguishable from *Clifton*, in which the ALJ's "bare conclusion [was] beyond meaningful judicial review." *Id.* Therefore, based on the ALJ's far more extensive reasoning in this case, we would not order a remand solely for the ALJ to expressly discuss Ms. Suttlemyre's statement. *See Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009). On the other hand, because we have already determined that a remand is necessary to allow the ALJ to properly evaluate

Dr. Hedges' RFC opinion, we note that, contrary to the Commissioner's assertion, Ms. Suttlemyre's statement does not appear to be entirely cumulative of the other evidence related to Mr. Richardson's condition before age twenty-two. While she did describe his learning difficulties, she also addressed his problems with social interaction.[5] Ultimately, we leave it to the ALJ, in the context of the remand we have ordered, to determine the extent to which a discussion of Ms. Suttlemyre's statement is appropriate.

**B.**

In light of our remand to allow the ALJ to evaluate and weigh Dr. Hedges' RFC opinion, we address only briefly Mr. Richardson's remaining claims on appeal. He contends the ALJ should have consulted a medical advisor to determine the onset date of his disability. The Commissioner argues it is difficult to see how a medical advisor could give an opinion with respect to disability onset with a legitimate medical basis when the only medical evidence postdates Mr. Richardson's twenty-second birthday by a dozen years. Citing SSR 83-20, 1983 WL 31249, at *3, Mr. Richardson counters that consultation of a medical advisor is appropriate here because it is possible to infer, based on the record, that his disability began before his twenty-second birthday. Dr. Hedges purported to

---

[5]     We note, as well, that prior to issuing his decision, the ALJ observed that the Ms. Suttlemyre's experience with Mr. Richardson was much like Dr. Carlisle's experience with him. *See* Aplt. App., Vol. I at 41.

do just that. And in evaluating and weighing Dr. Hedges' opinion on remand, the ALJ is tasked with determining the extent to which it is supported by the relevant evidence. *See* 20 C.F.R. § 404.1527(d)(3) & (f)(2)(ii).

Finally, Mr. Richardson concedes in his reply brief that the ALJ did not use the Grids conclusively to find him not disabled. But he asserts that, in light of his numerous, moderate mental limitations as set forth in Dr. Hedges' RFC opinion, it was error for the ALJ not to take testimony from a vocational expert (VE) in order to identify the jobs available to him. On remand, after evaluating Dr. Hedges' opinion, the ALJ will need to determine whether VE testimony is appropriate based upon Mr. Richardson's resulting RFC.

## III.

The judgment of the district court is REVERSED. We REMAND this case to the district court with instructions to REMAND to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


David M. Ebel
Circuit Judge

-14-