**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 2, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MIKAEL DJUE KOFFI,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 21-9535
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Mikael Djue Koffi is a native and citizen of Côte d'Ivoire (Ivory Coast).  An

Immigration Judge (IJ) denied his application for asylum, statutory withholding of

removal, and withholding of removal under the Convention Against Torture (CAT),

and ordered his removal to Ivory Coast.  The Board of Immigration Appeals (BIA)

dismissed his appeal of the IJ's decision, and Koffi has filed a petition for review.

Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

Koffi entered the United States in January 2018 on a valid student visa.  The Department of Homeland Security served him with a notice to appear before an IJ because he failed to comply with his visa requirements.  Before the IJ, Koffi applied for asylum, withholding of removal, and CAT withholding, asserting past harm and the threat of future harm based on an imputed political opinion.

At a hearing before the IJ, Koffi explained that there was an attempted military mutiny in Ivory Coast in January 2017, and his uncle, a military colonel, was detained and questioned about it.  His uncle was released and then decided to leave the country.  He asked Koffi to stay at his home and take care of it.  While Koffi was staying at his uncle's home, the police came to search it.  Koffi cooperated in the search.  The police found a box of weapons and asked Koffi if he was in the military.  Koffi gave them his identification card and said he did not know anything about the weapons.  The police slapped him and pushed him to the ground, injuring his arm, and possibly dislocating it.  They took him to the police station and kept him in jail for about a week, questioning him about his uncle and his uncle's soldiers.  At the jail, someone "who knew something about medicine" looked at Koffi's arm.  Admin. R. at 102.  The republican guard then detained Koffi in a different jail for a week, where he was beaten every day, questioned about his uncle, and not fed well.[1]  He was next transferred to a military prison and held there for about two-and-a-half

---

[1] Koffi testified that the republican guard is "a force . . . dedicated only for the president."  Admin. R. at 104:15-16.

months.  He was not "physically harmed" at the prison.  *Id.* at 106.  There, a prison official who knew Koffi's uncle noticed him and helped Koffi get released from prison.

Koffi's father was concerned Koffi would be arrested or detained again, so he sent Koffi to live with Koffi's mother in a remote Ivory Coast village.  Koffi stayed there unharmed for six months.  During that time he learned that police had searched and destroyed his father's home looking for weapons and Koffi's uncle.  In January 2018, Koffi left Ivory Coast with a student visa his father had obtained for him.  While at the airport, Koffi noticed republican guard members and feared he would be detained, but a friend of his father's bribed an official to allow Koffi to leave without incident.

Since Koffi came to the United States in January 2018, no member of his family has been harmed.  In November 2018, he posted a video online that received comments from individuals Koffi believed were the soldiers who had detained him.  One comment said, "we found you," *id.* at 115, and other comments insulted Koffi.  Based on those comments, Koffi feared the soldiers had located him and will harm him if he returns to Ivory Coast.

The IJ found Koffi generally credible but denied all forms of relief.  With respect to the asylum claim, the IJ concluded the level of harm Koffi suffered did not constitute persecution because his testimony was vague regarding being beaten daily, and it appeared he was not badly injured because he did not testify he needed medical attention other than what he received for his initial arm injury.  The IJ further

3

determined that even if the level of harm was sufficient to establish persecution, it was not on account of a statutorily protected ground. Because Koffi testified he was not politically active and had no political opinion, the IJ considered whether his uncle's political opinion could be imputed to him, but the IJ was unable to find a sufficient connection in that regard. Instead, the IJ found it appeared more likely the government was interested in Koffi because he was found in a home with a large case of illegal weapons. The IJ also noted Koffi was able to successfully relocate to a remote village where he was not harmed. Accordingly, the IJ denied asylum. And because Koffi failed to meet his burden under the lesser asylum standard, the IJ found Koffi had not met his burden to establish a claim for statutory withholding of removal.

As for withholding of removal under the CAT, the IJ found that country conditions indicated some ongoing human rights violations, ineffective control over security services, and abuse of detainees and prisoners. But the IJ found no particularized risk of torture or death given that the harm Koffi suffered in the past did not amount to torture, no members of his family had been tortured, and he was able to successfully relocate in Ivory Coast and live there unharmed for six months prior to his departure to the United States. The IJ therefore determined Koffi failed to meet his burden of establishing he would likely be tortured if removed to Ivory Coast.

The BIA summarily agreed with the IJ's decision and dismissed Koffi's appeal. Koffi now seeks review of the BIA's decision.

## II.  DISCUSSION

A single BIA member issued a brief order deciding the merits of Koffi's appeal, so the BIA's order is the final order of removal we review.  *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  But because the BIA upheld the IJ's decision without adding any of its own analysis, we consult the IJ's decision where necessary to understand the grounds for the BIA's decision.  *See id.*  We review legal conclusions de novo and factual findings for substantial evidence.  *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008).  Under the substantial-evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  Because Koffi represents himself, we liberally construe his filings but do not act as his advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### A.  Asylum

An asylum applicant has the burden of proving his eligibility for asylum by establishing that he is a refugee as defined in 8 U.S.C. § 1101(a)(42).  *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004).  As relevant to Koffi's petition for review, an asylum applicant can establish refugee status by demonstrating that he has a well-founded fear of future persecution or that he has suffered past persecution, which gives rise to a rebuttable presumption that he has a well-founded fear of future persecution.  *See id.* at 1232-33; *see generally* 8 C.F.R. § 1208.13(b) (explaining eligibility requirements).  But there must be some nexus between the persecution and

the applicant's "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

The IJ determined Koffi had not established such a nexus. As the government correctly points out, Koffi has not challenged that determination. He argues only that the IJ erred in finding his past treatment did not rise to the level of persecution, his credible testimony should have been sufficient to establish eligibility for asylum, and the IJ did not consider country conditions. But without a showing of nexus, Koffi cannot establish refugee status regardless of the level of harm he experienced, the credibility of his testimony, or country conditions. Koffi's failure to challenge the IJ's nexus finding, therefore, forecloses success on his petition regardless of the merits of his challenges to IJ's ruling. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (failure to challenge an agency finding that is an independently sufficient basis for the denial of relief forecloses success on appeal regardless of the merits of an alternative ground).

## B. Statutory Withholding of Removal

Koffi's failure to challenge the nexus finding is also dispositive of his request for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), because that statute similarly requires a nexus between treatment and a protected ground: "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country *because of* the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A) (emphasis added).

6

## C. CAT Relief

Unlike asylum and statutory withholding of removal, CAT withholding does not require a nexus between torture and a statutorily protected ground. *Ritonga v. Holder*, 633 F.3d 971, 978 (10th Cir. 2011). Koffi's failure to address nexus, therefore, does not relieve us from addressing his CAT arguments.

To be eligible for withholding of removal under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). As relevant here, "[t]orture is defined as any act by which *severe* pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession." *Id.* § 1208.18(a)(1) (emphasis added). It "is an *extreme* form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a)(2) (emphasis added). And for "severe pain or suffering" to warrant CAT relief, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).[2]

In assessing the likelihood of torture, a fact-finder must consider all relevant evidence, specifically including "[e]vidence of past torture inflicted upon the

---

[2] Because torture requires both severe pain or suffering and an official-capacity component, Koffi's argument that the IJ erred in denying CAT relief despite recognizing that the Ivory Coast government acquiesced in the mistreatment he suffered is meritless.

applicant." *Id.* § 1208.16(c)(3)(i). The IJ found the mistreatment Koffi experienced

did not amount to torture. Koffi summarily contests that finding, but the evidence

does not compel a contrary conclusion. The police slapped him and injured his arm,

possibly dislocating it, and detained him for a week, but he appeared to require only

minimal treatment for his injury. The republican guard held him in jail for a week

with inadequate nutrition and beat him daily, but Koffi did not detail the severity of

those beatings or testify that he needed medical treatment. And although the

republican guard detained him in a military prison for several months, Koffi testified

he was not physically harmed there.[3]

But even if Koffi's mistreatment did amount to torture, "a [CAT] petitioner is

not entitled to a presumption of future torture based on evidence of past torture; nor

does a showing of past torture automatically render [him] CAT eligible." *Niang v.*

---

[3] The IJ apparently misunderstood Koffi's testimony by stating that during the two and a half months he was held at the military prison, Koffi was "'beaten' every day," "did not eat well," and "the food was not adequate." Admin. R. at 40. But Koffi's testimony makes clear that he was beaten and received inadequate nutrition only during the one week the republican guard held him in a jail, and that while at the military prison, he was not harmed and in fact provided with vitamins because he was tired, unwell, and losing weight. *See id.* at 106. The IJ's apparent misunderstanding of the testimony, however, is harmless, as Koffi's testimony shows that his claim that he suffered torture is even weaker than the IJ believed. Therefore, we are confident that, based on Koffi's testimony, any reasonable administrative factfinder would have reached the same conclusion—that Koffi was not tortured. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining that a court may employ harmless error in the administrative-review context where the administrative factfinder considered relevant evidence but did so improperly, and the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

*Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005). And here, the IJ relied on other evidence to deny CAT relief—none of Koffi's family had been tortured, Koffi was able to successfully relocate in Ivory Coast for six months before he left, and country conditions were not so bad that Koffi was entitled to CAT relief without showing it is more likely than not he will face an individualized risk of torture if he returns. That reliance was proper. *See* 8 C.F.R. § 1208.16(c)(2), (3)(ii)-(iv) (requiring analysis of likelihood that applicant himself would be tortured, including feasibility of relocation without likelihood of torture and evidence of country conditions, in particular any "gross, flagrant or mass violations of human rights within the country of removal, where applicable"). And the record evidence does not compel a rational factfinder to conclude otherwise. Nor does Koffi's summary reliance on *Edu v. Holder*, 624 F.3d 1137 (9th Cir. 2010), because the issues in *Edu* were whether the agency properly denied CAT relief based on determinations that Edu could avoid future torture by giving up the political protests that had led to the torture, *id.* at 1143, 1145-46, and by internally relocating, *id.* at 1146-47. Koffi raises no such issues in this case.

### III.  CONCLUSION

We deny the petition for review.

Entered for the Court

Nancy L. Moritz
Circuit Judge