**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**May 29, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

C.D.I.,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-1139
(D.C. No. 1:22-CV-00629-NYW)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

Plaintiff-Appellant C.D.I.[1] appeals from the district court's decision upholding the denial by the Commissioner of Social Security of his application for disability insurance benefits and supplemental security income. Exercising jurisdiction under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The District of Colorado's local rules provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only." D.C.COLO.LAPR 5.2(b). We do not have a corresponding rule, but because Plaintiff-Appellant docketed this appeal using only his initials, we use that convention throughout this Order and Judgment.

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we remand for further proceedings consistent with this opinion.

## I. Facts

C.D.I. filed his application in February 2019. He claimed disability based on cirrhosis of the liver, kidney failure, hearing and vision loss, depression, chronic fatigue, and back pain.[2] His application was ultimately denied by an ALJ in November 2021. The Appeals Council denied C.D.I.'s request for review, thereby rendering the ALJ's November 2021 opinion the final agency decision for purposes of judicial review.

### A. Evidence Concerning Chronic Fatigue

The evidence concerning C.D.I.'s chronic fatigue consists of three categories. First, C.D.I. focuses on symptoms associated with chronic fatigue syndrome (CFS) according to Social Security Ruling (SSR) 14-1p, which provides guidance on the types of evidence that establish a person has a medically determinable impairment of CFS. *See* SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014).[3] In particular, C.D.I. consistently complained of low energy, constant headaches, difficulty concentrating,

---

[2] C.D.I. alleges he became disabled as a result of multiple conditions. Because he only challenges the ALJ's evaluation of his chronic fatigue, we focus on the records relevant to those symptoms and diagnosis.

[3] *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) ("[S]ocial security rulings do not carry the force and effect of law," but "[t]hey are entitled to deference . . . because they constitute Social Security Administration interpretations of its own regulations and the statute which it administers." (citation and internal quotation marks omitted)).

and fluctuating memory. *Id.* at *3. He was also diagnosed with CFS by Adrian Bickley, a certified physician assistant, in May 2021. In addition, C.D.I. had abnormal sleep study findings and was diagnosed with irritable bowel syndrome, both of which SSR 14-1p associates with CFS. *See id.*

Second, C.D.I.'s reports of fatigue are noted throughout the record. For example, the medical professionals who treated C.D.I.'s liver cirrhosis mentioned fatigue on several occasions. On February 12, 2019, he reported severe fatigue and tremor to Karin B. Cesario, M.D., a gastroenterologist. Seven months later in a follow-up visit, C.D.I. again reported fatigue, which Dr. Cesario ascribed to C.D.I.'s obstructive sleep apnea, psychotropic medications, "and/or beta blockers." R. vol. 4 at 1127. Dr. Cesario again noted that C.D.I. had chronic fatigue in March 2020. C.D.I also reported fatigue in a visit with a physician assistant in August 2020.

Third, C.D.I. provided testimony at two different hearings concerning the limiting effects of his fatigue. In the first hearing, which took place four months before PA Bickley's CFS diagnosis, C.D.I. described having no energy and being "wiped out" after doing errands like grocery shopping. R. vol. 9 at 2465. At the second hearing, which took place approximately four months after the diagnosis, C.D.I. testified that he was constantly tired and that by 2:00 or 3:00 in the afternoon, he has to lie down for an hour or two.

## B. Administrative Proceedings and District Court Judgment

C.D.I.'s application was denied initially and on reconsideration. After a de novo hearing in January 2021, an ALJ denied C.D.I.'s application. The Appeals

3

Council remanded, however, because the ALJ did not evaluate the medical opinions of PA Bickley and Chris Bayley, M.D.  PA Bickley opined that, based on C.D.I.'s "lower back/musculoskeletal pain," C.D.I. is limited to sitting, standing, or walking for less than two hours a day, would need to lie down periodically, and would miss more than two days of work per month.  R. vol. 8 at 2191.  Dr. Bayley submitted a statement opining, among other things, that C.D.I.'s mental impairments would render him unable to work more than 30 percent of the time.

On remand, the ALJ held a second hearing and again denied C.D.I.'s application.  The ALJ applied the five-step sequential analysis set forth at 20 C.F.R. § 404.1520(a)(4).  The steps include evaluating whether:

> (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant has a medically severe impairment or impairments, (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation, (4) the impairment prevents the claimant from performing his or her past work, and (5) the claimant possesses a residual functional capacity . . . to perform other work in the national economy, considering his or her age, education, and work experience.

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

At step two, the ALJ concluded C.D.I. had three medically severe impairments: alcoholic cirrhosis of the liver, coronary artery disease, and obesity. She did not, however, evaluate C.D.I.'s chronic fatigue.  At step five, the ALJ concluded C.D.I. had the residual functional capacity to perform a range of light work.  Again, however, the ALJ's analysis did not include indications of C.D.I.'s chronic fatigue.  The ALJ found C.D.I. was not disabled based on her conclusion that

4

there exist jobs in the national economy for an individual with C.D.I.'s age, education, work experience, and residual functional capacity.

C.D.I. petitioned for review in the district court, arguing the ALJ improperly discounted C.D.I.'s chronic fatigue and should have applied the treating physician rule. The district court rejected those arguments and affirmed.

## II.  Discussion

### A.  Standard of Review

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  This "threshold . . . is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

### B.  The ALJ's Evaluation of C.D.I.'s Fatigue Symptoms and CFS Diagnosis

C.D.I. contends the ALJ improperly discounted his symptoms of fatigue and his diagnosis of CFS.

At the second hearing, C.D.I. identified CFS as one of his severe impairments preventing him from any substantial gainful activity, and he provided testimony

5

about the effects of fatigue on his daily life.  C.D.I. argues that "the ALJ erroneously concluded that C.D.I.'s chronic fatigue syndrome was not a medically determinable impairment and did not discuss SSR 14-[1]p."  Reply Br. at 5.  As far as we have been able to determine, however, the ALJ's step-two evaluation contains no mention of CFS at all, much less an analysis of whether it constitutes a medically determinable impairment.  Although the ALJ mentioned the word "fatigue" once in the context of C.D.I.'s possible stroke, it appeared to refer to fatigue generally as a symptom of stroke, not as a symptom specifically experienced by C.D.I.  Having omitted any discussion of CFS, it is therefore not surprising that the ALJ's decision contains no mention of SSR 14-1p.

The failure to consider all of the claimant's medically determinable impairments, singly and in combination, is typically reversible error.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  But because the ALJ found other severe impairments—namely, cirrhosis of the liver, coronary artery disease, and obesity—the error is harmless.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

The ALJ's step five analysis, however, was also problematic.  An ALJ must consider "all of the relevant medical and other evidence" in assessing a claimant's residual functional capacity.  20 C.F.R. § 404.1545(a)(3).  This means, as the Commissioner notes, that "[t]he ALJ accordingly considers a claimant's subjective symptoms against the backdrop of the other record evidence."  Answer Br. at 24; *see*

6

*also* 20 C.F.R. § 404.1529(c)(4). Here, the backdrop against which the ALJ considered C.D.I.'s fatigue symptoms was incomplete. First, the ALJ failed to acknowledge the CFS diagnosis, and indeed discounted C.D.I.'s reports of fatigue based on the purported lack of any supporting clinical findings or other medical evidence. *See* R. vol. 11 at 2853 (rejecting C.D.I.'s reports of fatigue because they "are subjective *and cannot be verified by . . . clinical findings*" (emphasis added)); *see also id.* at 2851 (finding that C.D.I.'s statements concerning the limiting effects of his fatigue "are not entirely consistent with the medical evidence").

Second, there was evidence in the record of other symptoms, diagnoses, and laboratory findings that SSR 14-1p associates with CFS. These included low energy, consistent headaches, difficulty concentrating, fluctuating memory, irritable bowel syndrome, and abnormal sleep study findings. *See* SSR 14-1p, 2014 WL 1371245, at *3. The ALJ determined that the evidence of headaches was unclear from the record, but her step five analysis contains virtually no discussion of the remaining indications of CFS. The Commissioner surmises that the ALJ did not discuss SSR 14-1p because CFS is a diagnosis of exclusion—*i.e.*, a diagnosis made by process of elimination once all other options are exhausted—and there was evidence of other conditions linked to C.D.I.'s reported fatigue. Embracing this reasoning, however, "risks violating the general rule against post hoc justification of administrative action." *Allen*, 357 F.3d at 1145.

It is true the ALJ found PA Bickley's August 2020 opinion was unsupported by the record or a narrative explanation. But that opinion was based on C.D.I.'s

7

lower back and musculoskeletal pain, not fatigue, and PA Bickley signed the opinion nine months *before* he diagnosed C.D.I. with chronic fatigue syndrome.  Thus, the ALJ's opinion gives no indication that the step five analysis included consideration of PA Bickley's diagnosis.  The district court opined that the ALJ "did not call into question [PA Bickley's] *diagnosis* or any other diagnosis."  R. vol. 11 at 2896.  This is true, but only insofar as the ALJ did not acknowledge the diagnosis at all.  Indeed, the phrase "chronic fatigue syndrome" appears nowhere in the ALJ's decision.

"It is improper for the ALJ to pick and choose among medical reports, using portions of the evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (the assessment of residual functional capacity "must . . . [i]nclude a resolution of any inconsistencies in the evidence as a whole"). We hold that the ALJ's RFC determination at step five was not based on "all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), and we therefore remand for the ALJ to consider whether C.D.I. possesses a residual functional capacity to perform other work in the national economy in light of all the relevant medical and other evidence, including the CFS diagnosis and other evidence relating to CFS.

### C.  Treating Physician Rule

C.D.I. also contends the ALJ erred in failing to apply the treating physician rule, which was adopted by regulation in 1991 and directed the Commissioner to "give more weight to medical opinions from treating sources than those from non-treating sources," *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

Under regulations adopted in 2017, however, the treating physician rule was abandoned. *See Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (noting that under the revised regulations, "the now-defunct treating physician rule . . . no longer applies"). The new regulations, which apply here because C.D.I. filed his application in 2019, provide that the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates them based on their persuasiveness. *See id.* §§ 404.1520c(c), 416.920c(c).

C.D.I. nonetheless argues the ALJ should have applied the former rule because (1) the Social Security Act mandates the treating physician rule and the Commissioner lacks the authority to abrogate it, and (2) the 2017 regulation is an improper attempt to overturn our adoption of the rule in *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983). We reject the argument.

"Where . . . the statute expressly entrusts the [Commissioner] with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulation[] promulgated exceeded the [Commissioner's] statutory authority and whether [it is] arbitrary and capricious."[4] *Heckler v.*

---

[4] C.D.I. does not contend that the 2017 regulations are arbitrary and capricious, and, in any case, the Commissioner has adequately explained the reasons for the new rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (to be codified at 20 C.F.R. Parts 404 and 416) (explaining the new regulations give more consideration to the content of the evidence, and "better reflect[] the actual state of health care today," in which

*Campbell*, 461 U.S. 458, 466 (1983). Here, the Commissioner did not exceed her statutory authority because the 2017 rule change falls squarely within the Social Security Act's express delegation of authority to the Commissioner. The Act gives "exceptionally broad authority" to the Commissioner "to prescribe standards for applying certain sections of the . . . Act." *Id.* (internal quotation marks omitted). This includes "full power and authority to . . . adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" for adjudicating disability claims. 42 U.S.C. § 405(a). As the district court correctly pointed out, the new regulations only concern *how* an ALJ should consider medical evidence; they do not change the "substantial evidence" standard of review or alter this court's obligation to review administrative decisions to determine whether they are supported by substantial evidence.

The fact that this court adopted the treating physician rule before the Commissioner codified it in 1991 is of no consequence. "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982

---

patients more commonly receive health care from multiple medical sources, such as managed care organizations, instead of from a single physician).

(2005).[5]  We have never held that the Social Security Act requires, unambiguously or otherwise, the application of the treating physician rule.  *See Harner v. Soc. Sec. Admin.*, 38 F.4th 892, 898 (11th Cir. 2022) ("none of the courts of appeals that applied the treating-physician rule before the 1991 regulation held that the rule was required by the Act").  Because the Social Security Act does not unambiguously require application of the treating physician rule, our adoption of the rule in *Broadbent*, 698 F.2d at 412, does not trump the 2017 regulations.

On remand, the ALJ should evaluate the medical opinions, including PA Bickley's medical opinion, based on their persuasiveness, as directed by the regulations adopted in 2017.

### III.  Conclusion

We remand to the ALJ for the reasons discussed above.

Entered for the Court

Allison H. Eid
Circuit Judge

---

[5] *See Chevron U.S.A, Inc., v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

11